# IN THE COURT OF APPEALS OF IOWA

No. 15-0115
Filed April 22, 2015

**IN THE INTEREST OF A.G., O.S.,
and S.S.,
  Minor Children,**

**D.S., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Monroe County, William S. Owens,

District Associate Judge.


A mother appeals from the dispositional order and dispositional review

order continuing out-of-home placement. **REVERSED AND REMANDED.**


Julie DeVries of DeVries Law Office, P.L.C., Centerville, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney

General, and Steven Goodlow, County Attorney, for appellee.

Robert Bozwell of Bozwell Law Office and James Underwood of

Underwood Law Office, Centerville, for father.

Debra George of Griffing & George Law Firm, Centerville, attorney and

guardian ad litem for minor children.


Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

In this child-in-need-of-assistance proceeding, Devin, the mother of A.G., O.S., and S.S., appeals from the dispositional order and the dispositional review order regarding O.S. The challenged orders continue legal custody of O.S. with the Iowa Department of Human Services ("IDHS") and continue placement of the child in foster care. Devin contends the juvenile court did not make the least restrictive disposition appropriate when considering all the circumstances of the case. *See* Iowa Code 232.99 (2013). She contends the district court should have suspended judgment and returned the child to her care. She further contends that returning the child to her care is in the best interests of the child.

I.

IDHS came into contact with this family in March 2014 when O.S. was admitted to the hospital with head trauma thought to be caused by an abusive act. The only persons who provided unsupervised care to O.S. during the possible time of injury were his parents Devin and Justin. Pursuant to an ex parte removal order, O.S. was removed from Devin and Justin's care and placed with suitable others. A.G. was removed from Devin and Justin and placed with A.G.'s biological father Nathan. S.S. was not yet born at the time of removal. At the time of S.S.'s birth in July 2014, she was removed from the family and placed in the care of suitable others.

After removal of the children from the family's care, this matter came on for a temporary removal hearing. In an order issued June 2014, the juvenile court continued placement of A.G. with A.G.'s biological father. The court

continued placement of O.S. with suitable others. The court noted there was a continuing investigation into the facts and circumstances regarding O.S.'s injuries and the parents had not provided an explanation of injury consistent with the medical evidence. The court concluded both children remained at imminent risk of harm unless removed from the parents.

Contemporaneous with removing the children from this family, the State filed its petition to adjudicate the children in need of assistance (CINA). The petition asserted the children were in need of assistance pursuant to Iowa Code section 232.2(6)(b) (defining child in need of assistance to include one who has suffered physical abuse or neglect). On August 25, 2014, without admitting to the allegations set forth in the petition, the parents stipulated the children were in need of assistance pursuant to a different Code section, Iowa Code section 232.2(6)(c)(2) (defining child in need of assistance to mean one who has suffered or is imminently likely to suffer harmful effects as a result of the failure to exercise a reasonable degree of care in supervising the child). The juvenile court found the record sufficient to support a finding the children were in need of assistance pursuant to section 232.2(6)(c)(2). Although all children were adjudicated in need of assistance, the court ordered A.G. returned to the mother under the conditions of a safety plan. The juvenile court ordered that custody of O.S. and S.S. remain with IDHS for placement into foster care. At a subsequent hearing, Devin testified she stipulated to the adjudication because it was the fastest way to have A.G. returned to her care and because her lawyer told her she would most likely have her parental rights terminated if she did not sign the stipulation.

The case came on for a disposition hearing in November 2014. At the disposition hearing, IDHS recommended A.G. remain in the custody and care of the mother. IDHS also recommended custody of O.S. and S.S. remain with IDHS for placement in foster care. On December 1, 2014, the juvenile court issued its disposition order. The juvenile court found that A.G. was in the mother's home and "doing well." The court found that O.S. and S.S. had visitation with Devin and Justin two times per week, and "there are no reported concerns." The court noted the family's service provider "testified Devin and Justin have been responsive and cooperative with services . . . [and] that Devin and Justin have followed the safety plan established for the family." The juvenile court nonetheless concluded O.S. "would be in imminent risk to life or health unless removed." The juvenile court ordered O.S. to remain placed in foster care.

Shortly after the disposition hearing, the matter came on again for a disposition review hearing. In an order issued January 7, 2015, the juvenile court found that both parents had completed their psychological assessments. The court found that both parents were participating in IDHS-required therapy and attending IDHS-required appointments. The reports from these sessions and appointments showed the parents made progress in each session. The court noted that S.S. had been returned to the parents' custody and care and that the parents were having extended visits with O.S. The court further found "Devin and Justin are doing well, are participating in all recommended services, and doing well with visits." Again, without noting any deficiencies in the parents, the

court ordered that custody of O.S. remain with IDHS for placement in foster care. The court also ordered that IDHS develop a reunification schedule for O.S. with the goal that O.S. be reunited with the family before the next scheduled review hearing. The mother timely appeals from the dispositional and dispositional review orders.

II.

We review CINA proceedings de novo. *See In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). Although not bound by the juvenile court's factual findings, we give them weight, especially when considering the credibility of witnesses. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). "The most important consideration in any CINA case is the best interest of the child." *D.D.*, 653 N.W.2d at 362.

Following a dispositional hearing, Iowa courts are required to "make the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4). The Code sets forth possible dispositions in sections 232.100 through 232.102, from least restrictive to most restrictive. Suspending judgment is the least restrictive alternative. *See* Iowa Code § 232.100. Where there is a suspended judgment, the child remains with the parent. *See State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 615 (Iowa 2013). Transfer of legal custody and placement away from the parent is the most restrictive. Iowa Code § 232.102.

Here, the juvenile court chose the most restrictive disposition—transfer of custody for placement into foster care. Custody may be transferred by the juvenile court if it finds by clear and convincing evidence that "(1) The child

cannot be protected from physical abuse without transfer of custody; or (2) The child cannot be protected from some harm which would justify the adjudication of the child as a [CINA] and an adequate placement is available." *Id.* Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *See In re L.G.*, 532 N .W.2d 478, 481 (Iowa Ct. App. 1995). It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* Because our review is de novo, we should not be passive where there is a deficient presentation of evidence. Instead, we must satisfy ourselves the State has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for transferring custody.

We conclude there was not clear and convincing evidence supporting the disposition ordered here. First, while not revisiting the adjudication order, we recognize the medical evidence developed after removal casts some doubt on whether the child was at risk of physical abuse. Throughout these proceedings, neither Devin nor Justin admitted to abusing O.S. In fact, they denied the allegations of abuse and requested a second opinion regarding the cause of O.S.'s head injuries given his medical history. They obtained a second opinion from Dr. Kenneth Mack of the Mayo Clinic, who evaluated O.S. Dr. Mack's report indicates diagnoses of macrocephaly and history of seizures and pailledema secondary in whole or part to a venous sinus thrombosis. Dr. Mack's report discusses potential other causes of injury and concludes, "I rarely say this, but I think in this particular situation, one has to be suspicious that there may be an

explanation other than nonaccidental trauma for what we are seeing with the neuroimaging studies." Dr. Mack's conclusion that there may be explanations for O.S.'s injury has not yet been addressed by IDHS.

Second, the record establishes the parents largely have been compliant with IDHS's required services and programming and have been appropriate with the children. The parents completed required psychological assessments and attended their parent-child interactive therapy sessions. The service provider working with the family, when asked whether she had "any other suggestion for services that would help Devin reunite with her children," responded, "No, not at this moment. I think they've been addressed." The parents exercised supervised visitation with all of the children, including O.S. By all accounts, those visits went well. The children seemed bonded with each other and appropriately bonded with the parents. IDHS recommended and the juvenile court found that A.G. and S.S. should be returned to the legal custody and care of the parents.

Third, and dispositive, we are at a loss to reconcile the different dispositions with respect to each of the children in this case. The adjudication order found the children to be in need of assistance due to the risk of harm caused by the parents' failure to provide adequate supervision. Nonetheless, at the time of adjudication, the juvenile court ordered A.G. returned to the parents' legal custody and care subject to a safety plan. At the time of the review hearing, S.S., O.S.'s younger sibling, was returned to the care of the parents. There is no evidence in the record that supports the conclusion that O.S. was materially more likely to suffer abuse or other adjudicatory harm than A.G. or S.S. There is no

evidence in the record that would otherwise support the different dispositions. Our court has concluded that, until the parent can establish the ability to parent the child safely, the least restrictive disposition is for the child to be placed with others. *See In re L.F.*, No. 13-1409, 2013 WL 5949653, at *4-5 (Iowa Ct. App. Nov. 6, 2013) (affirming dispositional order placing child outside home where evidence established child abuse, mother undoubtedly lied about the child abuse, and mother recruited child's sibling to take responsibility for injury); *In re J.C.*, No. 13-1957, 2013 WL 3291867 at *3 (Iowa Ct. App. June 26, 2013) (affirming dispositional order placing child with another where mother failed to demonstrate the ability to safely care for the child); *In re M.O.*, No. 06-0405, 2006 WL 1280481, at * 2 (Iowa Ct. App. May 10, 2006) (affirming juvenile court order of continued placement with another where mother had substantially addressed mental health and parenting issues but record reflected she had not yet completed all remedial services intended to improve her parenting skills). Where, as here, IDHS recommended and the juvenile court found that two other children of similar age could be safely returned to the parents, in the absence of any distinguishing factor regarding the third child, we must conclude that the third child could also be returned to the parents. *Cf. In re J.S.*, No. 14-1014, 2014 WL 4938012, at *4 (Iowa Ct. App. Oct. 1, 2014) (affirming different disposition as to three children where oldest, teenage child had particular psychological needs and expressed desire to not be placed with parents); *In re S.R.A.*, 440 N.W.2d 619, 621 (Iowa Ct. App. 1989) (affirming disposition order for placement outside

family where evidence established sex abuse occurred and all experts testified the family could not be reunited without additional services).

We also agree that the State did not overcome the presumption that O.S.'s best interests are best served by being returned to the custody and care of the parents. Iowa Code chapter 232 is to be "liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1. There is a rebuttable presumption that the child's best interests are served by parental custody, *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991), and whenever possible, "the court should permit the child to remain at home with the child's parent, guardian, or custodian." Iowa Code § 232.102(5)(a). As indicated above, the service providers could not identify any additional services Devin needed at this time. The testimony established O.S. and Devin are bonded. O.S. is excited to see his mother at visitation, squealing with delight, raising his arms, and hugging her. We conclude it is in the best interest of the child for disposition of this case to be in harmony with the disposition of the cases involving the child's siblings until such time as the evidence dictates a different result.

III.

For the foregoing reasons, we find granting custody of O.S. to IDHS for placement in nonrelative foster care was not the least restrictive placement and contrary to the best interests of the child. Accordingly, we reverse and remand for entry of a disposition order not inconsistent with this opinion. *See In re K.P.*,

No. 11-1869, 2012 WL 2122227, at *11 (Iowa Ct. App. June 13, 2012) (providing the same relief).

**REVERSED AND REMANDED.**